UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| KATHRYN ORMSBY, PATRICK ORMSBY, JEFFREY HECKE, and RACHEL ORMSBY, <br><br> Plaintiffs, <br> v. <br><br> FORT WAYNE CITY POLICE OFFICERS/ EMERGENCY SERVICES TEAM MEMBERS SHANE LEE, GEORGE NICKLOW, KEVIN ZELT, MARTIN GROOMS, JASON BROWN, TRENT FARRELL, PETER MOONEY, DANIEL INGRAM, BENJAMIN MILLER, CHRISTOPHER FAHERTY, MITCHELL MCKINNEY, JEFF RIPLEY, SHANE HEATH, KURT FRANCEUS, SHANE PULVER, MARK BROWN, CRAIG WISE, RANDY HOSFORD, and JAMIE MASTERS (all sued in their individual capacities), <br><br> Defendants. | Case No.: 1:11-CV-353 |

## OPINION AND ORDER

### I. INTRODUCTION

In October 2009, Defendant Randy Hosford, a sergeant with the Fort Wayne Police Department ("FWPD"), arrested Plaintiff Rachel Ormsby for several drug charges at the directive of Defendant Shane Heath, a FWPD vice and narcotics detective. Prior to ordering her arrested, Detective Heath had observed Rachel appearing to facilitate a controlled drug purchase and had participated in a search of the home she shared with her mother and two brothers that uncovered drugs and drug distribution materials in her bedroom.

Subsequently, along with her mother and brothers, Rachel brought this action under 42

1

U.S.C. § 1983 against the Defendant Officers.[1] While her relatives' claims arise out of the search of their home, Rachel's sole contention is that she was arrested without a warrant or probable cause.

Defendants moved for partial summary judgment on Rachel's unlawful arrest claim (Docket # 53), arguing that there was probable cause to arrest her and that, even if there was not, Sergeant Hosford and Detective Heath are entitled to qualified immunity. Despite two extensions of time (Docket # 58, 62), Rachel has not filed a response to the motion, and the time to do so has since passed.[2]

For the following reasons, Defendants' Motion for Partial Summary Judgment will be GRANTED.

## II. FACTUAL AND PROCEDURAL BACKGROUND[3]

In the fall of 2009, Rachel Ormsby was seventeen years old and living with her mother, Kathryn Ormsby, and two of her brothers, Patrick Ormsby and Jeffrey Hecke, at 810 Spring Street in Fort Wayne, Indiana. (*See* R. Ormsby Dep. 2; K. Ormsby Dep. 2, 5-7; Wise Aff. ¶ 3.) Her boyfriend was Dustin Starr. (R. Ormsby Dep. 3.)

On September 14, 2009, Detective Shane Heath and another detective from the FWPD

---

[1] Subject matter jurisdiction arises under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (Docket # 23.)

[2] Because Rachel did not file a response to Defendants' motion for partial summary judgment, the Court could have ruled on the motion summarily. *See* N.D. IND. L.R. 7-1(d)(4).

[3] As Rachel failed to respond to Defendants' factual statement, the Court considers the facts undisputed for purposes of the motion, *see* FED. R. CIV. P. 56(e)(2), and deems those facts admitted to the extent they are supported by evidence in the record. *Coach, Inc. v. Diva's House of Style*, No. 3:11-CV-253 JD, 2012 WL 6049722, at *1 (N.D. Ind. Dec. 5, 2012) (citing *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (citation omitted)). At the same time, however, the Court still views the facts in the light most favorable to Rachel, the nonmoving party, and draws all reasonable inferences in her favor. *Keeton*, 667 F.3d at 884.

2

Vice and Narcotics Division, acting on a tip from a confidential informant ("CI") that Dustin Starr had four ounces of powdered cocaine that Patrick Ormsby could order from him, set up a CI purchase of cocaine from Patrick at 810 Spring Street. (*See* Heath Aff. ¶¶ 2-4; Wise Aff. ¶ 3.) When the CI, wearing an electronic monitoring and recording device, arrived at 810 Spring Street around 8:54 that night, Patrick informed him that Starr had just left. (Heath Aff. ¶¶ 7, 10, 12.)

According to Officer Craig Wise, who was conducting surveillance of Starr's residence on this day, around 9:00 p.m., Starr arrived home with a white female with brown hair—whom the CI later identified as Patrick's sister and Starr's girlfriend (Heath Aff. ¶ 33), a description fitting only Rachel Ormsby[4]—and appeared to make an exchange with two people who arrived in a separate vehicle. (Wise Aff. ¶¶ 4-5.)

Patrick then called Starr around 9:10 (Heath Aff. ¶ 12), and about three minutes later, Rachel left Starr's residence in a vehicle, which FWPD surveillance units then followed to 810 Spring Street. (Wise Aff. ¶ 7.) As Rachel exited the vehicle and walked into 810 Spring Street, Detective Heath observed that her right hand was clenched as if she were holding something in it. (Heath Aff. ¶ 16.) Shortly after Rachel arrived, Patrick provided the CI with the suspected cocaine, which later tested positive for cocaine. (Heath Aff. ¶¶ 17, 30.) Once the CI met up with the detectives, he stated that Rachel had arrived shortly after Patrick called Starr and was present when the drug transaction occurred. (Heath Aff. ¶ 23.) An audio recording of the drug transaction confirms that shortly after a female voice is heard, the drug transaction was completed. (Heath Aff. ¶ 33.) Detective Heath believed, based upon his training and experience

---

[4] There appears to be no dispute that this "white female with brown hair" was Rachel Ormsby. As such, the Court will refer to the white female as simply Rachel.

as a narcotics detective, that the timing of Rachel's arrival and the completion of the drug sale was consistent with Rachel delivering the cocaine to 810 Spring Street. (Heath Aff. ¶ 33.)

On October 6, 2009, several FWPD officers, including Detective Heath, served a valid search warrant at 810 Spring Street. (Heath Aff. ¶ 34.) Although Rachel was not present during the search (R. Ormsby Dep. 7), officers found 18.7 grams of cocaine, 24.2 grams of marijuana, 67 Ecstacy pills, and what was most likely psilocybin mushrooms in a safe on a dresser in her bedroom.[5] (Heath Aff. ¶¶ 36-42.) Also inside the safe were several empty sandwich bags, some with the corners removed; several gallon-sized Ziploc bags; multiple smaller bags; a bottle of Inositol Powder; and four sets of digital scales. (Heath Aff. ¶¶ 43-44.)

That same day, Detective Heath prepared a probable cause affidavit, attesting that he had probable cause to believe that Rachel had committed the crimes of dealing cocaine, dealing Ecstacy, dealing marijuana, and possessing psilocybin mushrooms. (Heath Aff. ¶ 45, Ex. T.) He cited to the discovery of the drugs in Rachel's bedroom as well as the empty sandwich and freezer bags, some with the corners cut off, which he stated drug traffickers commonly packaged controlled substances in; the bottle of Inositol Powder, which he noted was commonly used to "cut" cocaine; and the four sets of digital scales. (Heath Aff. Ex. T.) After determining that 810 Spring Street was 268 feet away from a school, Detective Heath prepared a second probable cause affidavit, stating that there was probable cause to believe that Rachel had dealt cocaine, Ecstacy, and marijuana, and possessed psilocybin mushrooms within 1000 feet of a school.

---

[5] There is no dispute that this bedroom belonged to Rachel. Detective Heath stated that Kathryn Ormsby had identified the room as Rachel's during the search and that it contained several items of female clothing, teenage female decor, and items on the wall with "Rachel" on them. (Heath Aff. ¶ 35.) Moreover, at her deposition, Kathryn confirmed that the room officers photographed, and in which they found the drugs and other materials, was Rachel's. (K. Ormsby Dep. 55.) And finally, Rachel admitted at her own deposition that she knew "the officers found a bunch of drugs in [her] bedroom." (R. Ormsby 14.)

4

(Heath Aff. ¶ 46, Ex. U.)

On October 21, 2009, Sergeant Randall Hosford was working part time at North Side High School when he was advised that Rachel was at the school. (Hosford Aff. ¶ 5.) Although Sergeant Hosford was not involved in the search of the Ormsby residence on October 6th, he knew that the search warrant was being served, that Rachel had been involved in a drug buy, and that drug charges were pending against her. (Hosford Aff. ¶¶ 3-5.) Before acting, Sergeant Hosford spoke with Detective Heath, who informed Sergeant Hosford that he had prepared a probable cause affidavit for Rachel's arrest and asked Sergeant Hosford to take her into custody. (Hosford Aff. ¶¶ 5-6.) After locating Rachel in a classroom, Sergeant Hosford arrested her. (Hosford Aff. ¶ 8.)

### III. STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 507 (7th Cir. 2010) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as

5

"summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

## IV. DISCUSSION

### A. Rachel's False Arrest Claim Fails as a Matter of Law

Rachel was arrested for dealing cocaine under Indiana Code § 35-48-4-1, which makes the knowing or intentional delivery of cocaine a felony; dealing a controlled substance under Indiana Code § 35-48-4-2, which makes the knowing or intentional delivery of a schedule I, II, or III controlled substance a felony; possessing a controlled substance under Indiana Code § 35-48-4-7, which makes it a felony to knowingly or intentionally possess certain controlled substances; and dealing marijuana or hashish under Indiana Code § 35-48-4-10, which makes it a misdemeanor to knowingly or intentionally deliver marijuana. (Defs.' Ex. G.) Rachel claims, however, that Sergeant Hosford arrested her without a warrant and probable cause. (Compl. ¶ 13.) Although Rachel bears the burden of proving the absence of probable cause, *McBride v. Grice*, 576 F.3d 703, 706 (7th Cir. 2009), she has not responded to Defendants' motion for partial summary judgment and therefore offers no argument or evidence supporting her claim.

"Probable cause is an absolute defense to a claim of wrongful arrest under section 1983 against police officers." *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008). Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime. *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 714 (7th Cir. 2013) (citing *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir.

2012)). Officers who have probable cause can arrest a suspect without a warrant. *Smith v. Gomez*, 550 F.3d 613, 618 (7th Cir. 2008). Although probable cause is generally determined by the jury, a court may rule on it as a matter of law if the facts are undisputed. *See Duvall v. Kroger Co.*, 549 N.E.2d 403, 405-06 (Ind. Ct. App. 1990).

Furthermore, an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Rather, "an arrest is reasonable under the Fourth Amendment so long as there is probable cause to believe that some criminal offense has been or is being committed, even if it is not the crime with which the officers initially charge the suspect." *McComas v. Brickley*, 673 F.3d 722, 727 (7th Cir. 2012) (internal quotations and citation omitted). As such, "[a]ctual existence of *any* probable cause to arrest precludes a § 1983 suit for false arrest." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 762 (7th Cir. 2006) (emphasis in original).

Here, Sergeant Hosford, who was not present during the search of the Ormsby residence but knew of Rachel's alleged participation in a drug buy and the drug charges pending against her, arrested Rachel at Detective Heath's directive. Under the collective knowledge doctrine, "[t]he police who actually make the arrest need not personally know all the facts that constitute probable cause if they reasonably are acting at the direction of another officer or police agency." *United States v. Parra*, 402 F.3d 752, 764 (7th Cir. 2005) (quoting *Tangwall v. Stuckey*, 135 F.3d 510, 517 (7th Cir. 1998)). Ordinarily then, an "arrest is proper so long as the knowledge of the officer directing the arrest, or the collective knowledge of the agency he works for, is sufficient to constitute probable cause." *Id.* (quoting *Tangwall*, 135 F.3d at 517); *accord United States v. Williams*, 627 F.3d 247, 256 (7th Cir. 2010). Therefore, the pertinent question is whether

7

Detective Heath's knowledge, or the collective knowledge of the FWPD, was sufficient to establish probable cause.

Based on the drug buy that Detective Heath set up and monitored and the fruits of the search of the Ormsby residence, which Detective Heath was also present for, there was clearly probable cause to arrest Rachel for dealing and possessing drugs in this case. During the drug buy between the CI and Patrick Ormsby on September 14, 2009, Detective Heath observed Rachel arrive at the Ormsby residence shortly after Patrick called Starr, Rachel's boyfriend, presumably to order the cocaine that Starr had. Providing more credence to this, Officer Wise was watching Starr's residence and saw Rachel leave shortly after Starr appeared to make an exchange with two other individuals and about three minutes after Patrick called Starr. Moreover, the drug sale was completed a short time after Rachel arrived at the Ormsby residence, clenching her right hand in a way that appeared to Detective Heath that she was holding something in it. The timing of the drug transaction—as well as Rachel's presence during it—is supported by both the CI's statements to Detective Heath and the recording of the transaction, which Detective Heath listened to. Detective Heath then concluded, based on his training and experience as a narcotics detective, that the timing of Rachel's arrival and the completion of the drug transaction was consistent with Rachel delivering the cocaine.

Furthermore, during the search of the Ormsby residence on October 6, 2009, FWPD officers discovered 18.7 grams of cocaine, 24.2 grams of marijuana, 67 Ecstacy pills, and what appeared to be psilocybin mushrooms in a safe inside a bedroom that was indisputably Rachel's—Rachel herself admitted that she knew the officers found drugs in *her* bedroom (R. Ormsby Dep. 14). As such, there was probable cause to believe that Rachel had committed at

least the crime of *possession* of these illegal substances, *see Martin v. Engelman*, No. 1:10 CV 109, 2013 WL 149574, at *6 (N.D. Ind. Jan. 14, 2013) (finding that probable cause existed to arrest plaintiff on charges of possession of marijuana when officers found marijuana in a bedroom that plaintiff admitted was his), which would in itself preclude a § 1983 suit for false arrest, *Pourghoraishi*, 449 F.3d at 762.  In addition to the sheer quantity of cocaine, marijuana, and Ecstasy, the officers also found further evidence in her bedroom that Rachel was dealing these substances—namely, the different-sized plastic bags, some with their corners cut off; the bottle of Inositol Powder; and the four sets of digital scales; all of which Detective Heath attested were commonly used by drug traffickers.  All of this evidence, especially when combined with Rachel's actions during the drug sale on September 14th, would certainly warrant a reasonable, prudent person to believe that Rachel had committed the crimes of dealing cocaine, dealing marijuana, and dealing Ecstacy along with possession of a controlled substance, providing probable cause for her arrest.  *See Abbott*, 705 F.3d at 714.

Accordingly, because Detective Heath's knowledge was sufficient to constitute probable cause for Rachel's arrest, under the collective knowledge doctrine, Sergeant Hosford's arrest of Rachel, done at Detective Heath's directive, was proper and supported by probable cause.  *See Parra*, 402 F.3d at 764.  And as Sergeant Hosford had probable cause to arrest Rachel, he did not need a warrant to do so.  *See Smith*, 550 F.3d at 618.

Consequently, the presence of probable cause to arrest Rachel precludes her claim under § 1983 claim for false arrest, entitling Defendants to summary judgment on this claim.  *Chelios*, 520 F.3d at 685.  Because this is the only claim against Sergeant Hosford, he is further entitled to dismissal from this case.

*B.  Defendants Are Entitled to Qualified Immunity*

Even if probable cause did not exist for Rachel's arrest, Detective Heath and Sergeant Hosford would still be entitled to qualified immunity.  "[Q]ualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Gonzalez v. Vill. of West Milwaukee*, 671 F.3d 649, 657 (7th Cir. 2012) (quoting *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010)); *see Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  "Claims of qualified immunity involve two inquiries: (1) whether the official violated a constitutional or statutory right; and (2) whether the right was clearly established at the time of the alleged misconduct."  *Gonzalez*, 671 F.3d at 657 (citing *Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010)).  "A negative answer to either question entitles the official to the defense."  *Id*. (citing *Hanes v. Zurick*, 578 F.3d 491, 493 (7th Cir. 2009)).

In a false arrest case, "a defendant is entitled to qualified immunity . . . when, if there is no probable cause, 'a reasonable officer could have mistakenly believed that probable cause existed.'"  *Fleming v. Livingston Cnty.*, 674 F.3d 874, 879-80 (7th Cir. 2012) (quoting *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998)).  Thus, as long as Detective Heath reasonably, although possibly mistakenly, believed that probable cause existed to arrest Rachel, he is entitled to qualified immunity.  *Id.* at 880.  This standard is known as "arguable probable cause" and "is established 'when a reasonable officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law.'"  *Id.* (emphasis in original) (quoting *Humphrey*, 148 F.3d at 725).

Here, Detective Heath had arguable probable cause to order Rachel's arrest. He personally observed Rachel's actions during the drug buy on September 14th—actions which suggested to him that she had actually delivered the cocaine—and was involved in the search of her bedroom that uncovered cocaine, marijuana, Ecstacy, and psilocybin mushrooms as well as multiple plastic bags, four scales, and powder commonly used to cut cocaine. As such, a reasonable officer in the same circumstances and possessing the same knowledge as Detective Heath could have reasonably believed that probable cause existed to arrest Rachel for dealing cocaine, marijuana, and Ecstasy, and possessing psilocybin mushrooms.

In the case of Sergeant Hosford, "where a police officer makes an arrest on the basis of oral statements by fellow officers, an officer will be entitled to qualified immunity from liability in a civil rights suit for unlawful arrest provided it was objectively reasonable for him to believe, on the basis of the statements, that probable cause for the arrest existed." *Duran v. Sirgedas*, 240 F. App'x 104, 115 (7th Cir. 2007) (unpublished) (quoting *Rogers v. Powell*, 120 F.3d 446, 455 (3d Cir. 1997)). The question is, therefore, whether it was objectively reasonable for Sergeant Hosford to rely on Detective Heath's directive as a basis for believing that there was probable cause for Rachel's arrest. *Id.*

Before Sergeant Hosford arrested Rachel, he knew that several drug charges were pending against her, that she was allegedly involved in a drug transaction, and that a search warrant was served at her home. He then contacted Detective Heath, who informed him that he had prepared a probable cause affidavit for Rachel's arrest and directed him to take her into custody. Considering his own knowledge of the case and that Detective Hosford had already prepared a probable cause affidavit for Rachel's arrest—in fact, by that point, he had prepared

11

two of them—it was objectively reasonable for Sergeant Hosford to rely on the directive of Detective Heath, who had been personally involved in both the drug transaction and the drug raid, as a basis for believing that there was probable cause to arrest Rachel.

Accordingly, both Detective Heath and Sergeant Hosford are entitled to qualified immunity on Rachel's false arrest claim.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment (Docket # 53) is GRANTED as to Plaintiff Rachel Ormsby's false arrest claim.  As such, Defendant Randy Hosford is hereby DISMISSED from this case.

SO ORDERED.

Enter for this 3rd day of May, 2013.

/S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge